## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

LOTTERY.COM, INC f/k/a
AUTOLOTTO, INC., and TINBU, LLC,

      Plaintiffs,

v.                                  CASE NO. 8:23-cv-2594-KKM-TGW

JOHN J. BRIER, JR., BIN TU, and
GLOBAL GAMING DATA, LLC,

      Defendants.

_____

JOHN J. BRIER, JR., BIN TU, JBBT, LLC,
And GLOBAL GAMING DATA, LLC,

      Counter-Plaintiffs,

v.

LOTTERY.COM, INC f/k/a
AUTOLOTTO, INC., and TINBU, LLC,

      Counter-Defendants.

_____/

## RENEWED MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION OR, IN THE ALTERNATIVE, MOTION TO SET ASIDE DEFAULT AND COMPEL ARBITRATION BY COUNTER-DEFENDANTS LOTTERY.COM AND TINBU, LLC

Plaintiffs/Counter-Defendants LOTTERY.COM, INC. fka AUTOLOTTO, INC. ("Lottery") and TINBU, LLC, ("TinBu"), by and through the undersigned counsel, respectfully renew their motion to dismiss this case and the Counterclaims of John Brier, Bin Tu, and JBBT, LLC (the only remaining claims in this action) for lack of subject matter jurisdiction for the reasons explained below.  Should the Court determine that it has subject matter jurisdiction over the present dispute, Counter-

1

Defendants move in the alternative to set aside any default on the grounds that Counterplaintiffs failed to comply with Rule 55(a) and because good cause exists under Rule 55(c), as Lottery and TinBu have engaged replacement counsel, meritorious defenses exist, and the remaining counterclaims should be arbitrated.  Prior to filing this renewed motion, the undersigned counsel for Lottery and TinBu substantively conferred with counsel for Counterplaintiffs Brier, Tu, JBBT, and GGD concerning all of the matters raised in this motion, and no resolution has been reached on these issues, as noted in the included certification below.

## **INTRODUCTION**

This case involves a commercial business dispute arising out of Lottery's purchase of TinBu in 2018 and the subsequent disagreements that occurred between Lottery and TinBu's former owners, John Brier and BinTu.  The contracts involving the purchase/sale transaction and the parties' ongoing relationship were amended multiple times, ultimately culminating in the April 14, 2021 documents at the heart of the instant matter.  Included in these contracts are multiple arbitration provisions which govern the present dispute and require the Counterclaims to be arbitrated in Texas under the AAA Commercial Arbitration Rules.  Indeed, that is exactly the conclusion reached by the Circuit Court of Hillsborough County, Florida in a prior lawsuit filed by Brier, Tu, and JBBT filed in March 2023, when faced with the very same question. (Doc. 57-1.) Although Brier, Tu, and JBBT appealed that decision to the Second District Court of Appeal, they abandoned that appeal last year and voluntarily dismissed the Hillsborough County Circuit case, presumably to avoid the

order compelling arbitration from becoming final. But there are no new underlying facts for this Court to consider that would mandate a different result. The primary arbitration clause at issue covers "any and all…disputes and disagreements" including the alleged Counterclaims—as they are identical to the claims filed in the prior state court action.[1]

Before arbitration can be considered, however, the threshold issue of subject matter jurisdiction must be determined. Jurisdiction cannot simply be assumed, and without subject matter jurisdiction, this Court cannot adjudicate this dispute. Nor can it award any relief.

Plaintiffs' initial and amended Complaints asserted federal question jurisdiction based on claims arising under the DTSA, 18 U.S.C. § 1836 et seq. But that pleading was dismissed, and only the state law Counterclaims of Brier, Tu, and JBBT currently remain.[2] The Counterclaims do not independently plead any federal jurisdiction, and it has not been otherwise established.[3] Counter-Plaintiffs were given multiple opportunities to demonstrate to the Court that proper grounds exist to allow entry of default judgment; yet, they have failed to address the threshold issue of

---

[1] The Hillsborough County Circuit Court Complaint filed on March 13, 2023, by Brier, Tu, and JBBT in Case No. 2023-CA-2231 is in the record at Doc. 29-1, and the claims asserted are identical to the Counterclaims found at Doc. 12, pp. 39-44.

[2] GGD is identified as a "Counter-Plaintiff" in the caption of the Counterclaims, but GGD has not asserted any affirmative claims against Lottery or TinBu.

[3] The Counterclaim pleading does not assert any claim arising under federal question jurisdiction, and it also fails to demonstrate a separate basis of complete diversity of citizenship between the parties.

subject matter jurisdiction altogether.  This failure is a fatal one.

If the Court disagrees and finds it has jurisdiction over the Counterclaims, then default judgment still should not be entered because Counterplaintiffs failed to apply for or obtain the Clerk's entry of default as required by Rule 55(a).  Instead, the Court should grant Lottery and TinBu's request to open default for good cause under Rule 55(c), and the Court should compel the Counterclaims to be arbitrated in Texas as agreed in the relevant underlying contracts.

As demonstrated below, the arbitration provision is valid and enforceable.  The Counterclaims are all subject to arbitration because they fall within the broad "any and all disputes" scope of the arbitration clause.   Under the totality of the circumstances, Lottery and TinBu have not significantly participated in this litigation and have not acted inconsistently with or waived their right to arbitrate.  Accordingly, for the reasons explained further below and in the *Opposition to the Default Judgment and Objection to Damages Evidence* (at Doc. 127), this entire action should be dismissed for lack of subject matter jurisdiction. In the alternative, default should be set aside, and the parties should be ordered to arbitration.

## SUMMARY OF RELEVANT FACTS & PROCEDURAL BACKGROUND

This action was originally commenced by Plaintiffs/Counter-Defendants Lottery and TinBu on November 14, 2023, on the basis of federal question jurisdiction.[4] (Doc. 1.) At the time this case was filed, Lottery and TinBu had already

---

[4] The First Amended Complaint, filed one week later on November 21, 2023, also asserted federal question jurisdiction.  (Doc. 9.)

moved to compel arbitration against Brier, Tu, and JBBT, in the related state court action pending in the Circuit Court of Hillsborough County, Florida, Case No. 2023-CA-2231 (the "State Court Action").[5]  While Lottery and TinBu took great care to ensure the claims asserted in the pleadings this action were separate and distinct from those they sought to have arbitrated, Counterplaintiffs took the opposite approach. They simply re-filed their complaint in the State Court Action as a Counterclaims (Doc.12) in this case.

Following a hearing on November 16, 2023, Hillsborough County Circuit Court Judge Nancy L. Jacobs ordered that Brier, Tu, and JBBT arbitrate the claims they asserted against Lottery and TinBu—the very same claims that are labeled as "Counterclaims" here.  Dissatisfied, Counterplaintiffs appealed that decision to the Second District Court of Appeal, but they abandoned that appeal in July 2024, after all of the briefing had already been completed.  They also voluntarily dismissed the State Court Action.  But Counterplaintiffs never took any steps to commence arbitration proceedings.  Instead, they engaged in unnecessary motion practice in this Court, repeatedly trying to fix procedural missteps and join new individual parties to the case. On October 15, 2024, the Court declined to allow joinder of the individuals noting:  "The state court adjudicated the arbitrability dispute, which was well on its way to appellate resolution when Counterplaintiffs elected to end the case. Joining Dickinson, Clemenson, and DiMatteo at this stage will revive the arbitrability dispute

---

[5] The pending state court lawsuit was identified as a related action in the civil cover sheet at the time this action was commenced.  (Doc. 1-9.)

in a new forum….The only certain consequence will be a needless duplication of judicial effort as the Court wrestles with the difficult questions that such a resurrection would entail." (Doc. 91.)

This sentiment still holds true.  The only thing that has changed is the current procedural posture of the parties.  Lottery and TinBu's original counsel withdrew in January 2025, and the parties were instructed to retain new counsel. (Docs. 111, 113.) Unfortunately, despite their efforts, Lottery and TinBu were unable to do so within the timeframe ordered, due to several factors, including (among other things) the complicated history of this case and the parties, various other proceedings, and the fact that their first layer of insurance coverage was exhausted. (See Decl. of Lottery COO Gregory Potts at Doc. 127-1, ¶29-30.)  Taking advantage of the circumstances, Counterplaintiffs immediately moved for default judgment on all their Counterclaims; however, they never applied for a Clerk's entry of default or sought to have the entry of default against Lottery or TinBu placed on the record.  (Doc. 114.)  On February 25, 2025, this Court entered an Order dismissing plaintiffs' claims without prejudice "for failure to prosecute." (Doc. 115.)  At the same time, the Court referred defendants' motion for default judgment on their counterclaims to the Magistrate Judge. (Id.) On March 14, 2025, Magistrate Judge Wilson denied the motion for default judgment, deeming it "deficient" for Counterplaintiffs' failure to properly establish liability on the elements of each claim and because they did not provide any citations to proper legal authority and admitted facts as required by law. (Doc. 116.)  That Order did not specifically address Rule 55(a), but Magistrate Judge Wilson plainly advised

Counterplaintiffs they could not "merely refer the court to the counterclaim." (Doc. 116 at 2.) Undeterred, Counterplaintiffs filed an Amended Motion for Entry of Default Judgment on the Counterclaims four days later, citing only to Florida law (and not Delaware law, which governs the underlying contracts) and again pointing to the allegations in their Counterclaims as factual "proof" of the elements. (Doc. 117.) They made no application for the Clerk's entry of default as required by Rule 55(a), and they did not address subject matter jurisdiction or demonstrate that complete diversity exists between the parties. Magistrate Judge Wilson did not address the merits of the motion, but issued another Order on April 24, 2025, directing specific evidence to be provided, instructing notice to be given to Lottery and TinBu, and setting forth a schedule for such submissions. (Doc. 119.)

<u>**LEGAL ANALYSIS & ARGUMENT**</u>

**I.      No Subject-Matter Jurisdiction Exists.**

**A.      Legal Framework**

Federal courts are obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking, and regardless of whether it is challenged by the parties. *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999). This is because federal courts are "empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution or otherwise authorized by Congress." *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994) (citing Wright, Miller & Cooper, 13 FEDERAL PRACTICE AND PROCEDURE, § 3522 (1984)). "If the court determines at any time that it lacks subject-matter jurisdiction, the court

must dismiss the action." Fed. R. Civ. P. 12(h)(3). Any judgment rendered when a court lacks jurisdiction is void and without legal effect. *See Ferrier v. Cascade Falls Condo. Assoc., Inc.*, 820 Fed. Appx. 911, 914 (11th Cir. 2020), citing *Burke v. Smith*, 252 F.3d 1260, 1263 (11th Cir. 2001) (explaining that certain fundamental defects render a judgment void, including if the district court lacked subject matter jurisdiction when it entered the judgment).

A district court's original jurisdiction is limited to one of three types: "(1) jurisdiction under a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." *PTA-FLA, Inc. v. ZTE USA, Inc.,* 844 F.3d 1299, 1305 (11th Cir. 2016) (quoting *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1469 (11th Cir. 1997)). Federal question jurisdiction exists over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Diversity jurisdiction exists over a civil action in which the parties' citizenship is fully diverse and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). The diversity statute requires <u>complete</u> diversity between all plaintiffs and all defendants, meaning that each defendant must be a citizen of a different state from each plaintiff. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978).

The burden of establishing jurisdiction rests upon the party invoking it. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Here, that burden rests upon Counter-Plaintiffs Brier, Tu, and JBBT, since they are the parties seeking affirmative relief from the Court. But they have not and cannot meet that

burden. Accordingly, dismissal of this entire action for lack of subject matter jurisdiction is both proper and warranted. *See Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d at 410. (explaining that without jurisdiction, the Court is powerless to continue and should dismiss the case).

### B.    The Counterclaim Does Not Demonstrate Jurisdiction Exists.

The DTSA claims that provided the original basis for federal jurisdiction were dismissed without prejudice by order of the Court on February 25, 2025. (Doc. 115.) The only remaining claims for adjudication are the Counterclaims for breach of contract and claims for various fraudulent and negligent misrepresentations, all of which arise under state law. (Doc. 12 at 23-44.) No claim is asserted under a specific grant of statutory authority, and none of the Counterclaims invoke federal question jurisdiction. The pleadings also do not establish diversity jurisdiction. There are no allegations regarding <u>citizenship</u> of any of the parties in the original or amended complaints, and the counterclaim pleading does not address citizenship either. (Doc. 1 at 3; Doc. 9 at 3; Doc. 12 at 25.) The Court is not required "to parse the complaint searching for allegations…that could conceivably form the basis of each of [Counterplaintiffs'] claims." *Ferrell v. Durbin*, 311 Fed. Appx. 253, 259(11th Cir. 2009). This was Counterplaintiffs' duty, and they failed to meet their burden.

When Brier, Tu, GGD, answered the amended complaint adding JBBT (without leave of Court at the time) and asserting Counterclaims, they alleged only that damages were in excess of $75,000. (Doc. 12 at 25.) Nothing was asserted about

citizenship.  Rather, the allegations discussed the residence of the individuals and the principal place of business of the corporate parties, as shown below:

> 7.  Plaintiff Brier is an individual who resides in Hillsborough County, Florida.
>
> 8.  Plaintiff Tu is an individual who resides in Hillsborough County, Florida.
>
> 9. Plaintiff JBBT is a Florida limited liability company with a principal place of business in Hillsborough County, Florida.
>
> 10. Defendant TinBu is a Florida limited liability company with a principal place of business in Hillsborough County, Florida.
>
> 11.  Defendant Lottery is a Delaware corporation, and the parent company of Defendant TinBu, which conducts business in Florida, maintains an office in Hillsborough County, Florida, and at all relevant times employed the individual Plaintiffs in Hillsborough County, Florida.

(Doc. 12 at 25.)  To establish diversity, citizenship must be alleged for both individuals and limited liability companies.  Residency alone is not enough. *See McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) (explaining a party's citizenship is not determined by its residency).

An individual is a citizen of the state in which he or she is domiciled. "[D]omicile requires both residence in a state and an intention to remain there indefinitely[.]" *Id.* Thus, a person can reside in one place, but be domiciled in another. *Id.* (citing *Turner v. Penn. Lumbermen's Mut. Fire. Ins. Co.,* No. 3:07-cv-374, 2007 WL 3104930, at *3–4 (M.D. Fla. Oct. 22, 2007)).  When assessing a person's domicile, courts consider a series of non-exclusive factors, including location of real and personal property, business ownership, employment records, voter and vehicle registration, bank accounts, payment of taxes, driver's license, membership in organizations, and other similar things. *See Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1149 (11th Cir. 2021). None of these are addressed here.

The allegations concerning JBBT, Lottery, and TinBu are similarly deficient. A limited liability company is a citizen of every state of which its members are citizens. *Thermoset Corp. v. Bldg. Materials Corp of Am.*, 849 F.3d 1313, 1317 (11th Cir. 2017). An LLC's state of incorporation and principal places of business are irrelevant. Yet, that is all that Counterplaintiffs provide. JBBT's members have not been identified; citizenship is not asserted. Likewise, they fail to identify citizenship of TinBu (other than to say Lottery is the parent company of TinBu). Although Lottery is a citizen of Delaware (where it is incorporated), its principal place of business is not identified. *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010) (explaining a corporation's citizenship is determined by the state of incorporation and principal place of business). Standing alone, the Counterclaim allegations are insufficient to establish subject matter jurisdiction. This is not the Court's puzzle to solve.

**C.    The Court Should Decline to Exercise Supplemental Jurisdiction.**

Although 28 U.S.C. § 1367(a), permits federal courts to exercise supplemental jurisdiction over "all state claims which arise out of a common nucleus of operative fact with a substantial federal claim," the Court may decline to do so if: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in other circumstances, there are other compelling reasons to decline jurisdiction. 28 U.S.C. § 1367(c). This decision falls squarely within the sound discretion of the trial court. *Utopia Provider Sys., Inc. v. Pro-Med Clinical Sys., LLC*, 596 F.3d 1313, 1328

(11th Cir. 2010)). However, the Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when...the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) (citing *L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 428 (11th Cir. 1984)). There are no compelling reasons for this Court to exercise supplemental jurisdiction over this matter, and the Court should decline to do so here. *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619 n. 7, 98 L.Ed.2d 720 (1988) ("When federal law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."), *cited in Baggett v. First Nat'l Bank of Gainesville,* 117 F.3d 1342, 1353 (11th Cir.1997).

In sum, no federal question jurisdiction exists, and none of the elements required under 28 U.S.C. § 1332(a)(1) to invoke this Court's diversity jurisdiction have been properly demonstrated. As such, the merits of the case cannot be considered, and the Court should dismiss this action in its entirety. *Arbaugh v. Y&H Corp.,* 546 U.S. 500, 514 (2006) ("[W]hen a federal court concludes it lacks subject matter-jurisdiction, the complaint must be dismissed in its entirety."); Fed. R. Civ. P. 12(h)(3) (requiring the Court to "dismiss the action" after determining it lacks subject–matter jurisdiction).

### D.   Default Does Not Override Subject-Matter Jurisdiction.

The suggestion of default does not allow Counterplaintiffs to circumvent their jurisdictional problems. Subject-matter jurisdiction can never be waived or forfeited.

*Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012); *Univ. of S. Ala.,* 168 F.3d at 409.  Plus, Federal Rule of Civil Procedure 55(c) allows default to be set aside for lack of subject matter jurisdiction.   *Bander v. Aerovanti, Inc*, No. 8:23-cv-01894-MSS, 2024 WL 2833723, at *3 (M.D. Fla. June 4, 2024) (denying motion for default judgment, setting aside default, and dismissing complaint without prejudice).  Simply stated, the existence of a default (which has not actually been entered here) or even entry of a default judgment cannot overcome a lack of subject matter jurisdiction.  *See e.g., Premium Leisure, LLC v. Gulf Coast Spa Mfrs., Inc.*, No. 8:08-cv-1048-T-24 EAJ, 2008 WL 3927265, at *3 (M.D. Fla. Aug. 21, 2008) (dismissing permissive counterclaims for lack of subject matter jurisdiction where the parties were not diverse, the counterclaims did not present a federal question, and the court lacked supplemental jurisdiction); *Cazella v. Winter*, No. 6:06-cv-1512-Orl-19JGG, 2007 WL 1101233, at *2 (M.D. Fla. Apr. 12, 2007) (striking clerk's entry of default, denying motion for default judgment, and dismissing complaint for lack of subject matter jurisdiction); *Barber v. Veterans Admin. Hosp.*, 1:12-cv-3462-WSD, 2013 WL 12062838, at *1 n.1 (N.D. Ga. Apr. 22, 2013) (finding default judgment could not be entered against the defendants because court lacked subject matter jurisdiction over the plaintiff's claims) (citing *Jackson v. People's Republic of China*, 794 F.2d 1490, 1496 n.2 (11th Cir. 1986)).

## II.    Default Must Be Set Aside.

### A.    There Is No Entry of Default As Required by Rule 55(a).

Setting aside the issue of subject matter jurisdiction, default judgment cannot be entered against Lottery and TinBu because Counterplaintiffs have not followed the proper procedures to obtain such relief.  The Federal Rules mandate a two-step process

to obtain default judgment: First, the moving party must seek an entry of default from the clerk of court; and Second, after the clerk's default is entered, they can move for default judgment. Fed. R. Civ. P. 55(a),(b). Here, there is no Clerk's entry of default appearing in the record; nor did Counterplaintiffs ever request it. Instead, they ignored Rule 55(a) entirely and moved directly for default judgment under Rule 55(b). (Docs. 114, 117 at p. 2, ¶¶3-4.)

This error precludes any entry of default judgment. Counterplaintiffs cannot simply decide the Clerk's entry of default is unnecessary and jump straight to a judgment under Rule 55(b). Their failure to first seek or obtain a Clerk's entry of default precludes the entry of judgment against Lottery and TinBu. *See* 10A Charles Alan Wright *et. al.*, FED. PRAC. & PROC. CIV. § 2682 (4th ed. 2016) ("Prior to obtaining a default judgment under either Rule 55(b)(1) or 55(b)(2), there must be an entry of default as provided by Rule 55(a)."); *Regions Bank v. Campus Dev. Research Schools, Inc.*, No. 6:15-cv-1332-Orl-41DAB, 2016 WL 3039650, at *2 (M.D. Fla. Feb 11, 2016) (stating that the law of this Circuit requires a clerk's entry of default to precede default judgment).

## B.   Good Cause Exists for Default to Be Set Aside.

Default judgment should also be denied, and default should be set aside for good cause under Rule 55(c). Default judgments are "generally disfavored" because this Circuit has a "strong policy of determining cases on their merits." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244–45 (11th Cir. 2015); *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003). The decision to enter a default judgment

"is committed to the discretion of the district court." *Hamm v. DeKalb Cnty.*, 774 F.2d
1567, 1576 (11th Cir. 1985).  Good cause is a flexible standard, "not susceptible to a
precise formula." *Compania Interamericana Export-Import, S.A. v. Compania
Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996).

The circumstances of this case are unique and favor setting aside any default.
This is not a situation where Lottery and TinBu completely failed to appear or defend.
In fact, they filed an Answer, asserting multiple meritorious defenses, which have not
been struck from the record. (Doc. 81.)  Rather, "default" stems from their failure to
timely engage new counsel after initial counsel withdrew and the Court ordered them
to do so.  Their delay was not willful or intentional. Rather, it was a culmination of
unfortunate circumstances and bad timing.  It is no secret that Lottery has faced a
barrage of litigation in multiple jurisdictions since its prior CEO, President, and CFO
were terminated in 2022/2023, and it has actively defended multiple duplicative
actions involving Brier, Tu, JBBT, and these Counterclaims in state court and the 2d
DCA—all at the same time this action was ongoing.  Lottery's current executives
(appointed after the prior terminations) have been working tirelessly to correct
reporting errors, ensure ongoing regulatory compliance, obtain funding, and stabilize
business operations since coming on board.  But by January 2025, insurance coverage
was exhausted and despite diligent efforts, Lottery and TinBu were unable to find and
engage substitute counsel by the Court's deadline. Consequently, their own
affirmative claims were dismissed without prejudice. Still, they kept looking for
counsel and as soon as they were able, they engaged the undersigned, who quickly

took steps to appear and renew their efforts to defend.

District courts apply the good cause criteria forgivingly, resolving doubts in favor of lifting the default. Some of the factors that a court may consider in determining if good cause exists includes whether there was excusable neglect on the part of the defaulting party, whether the defaulting party responded promptly after notice of the entry of default; if setting aside the default will prejudice the non-defaulting party, and if the defaulting party has a meritorious defense. *See Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264-67 (11th Cir. 2003) (finding Busch's failure to prove actual damages was sufficient "good cause" for the court to vacate default and enter final judgment for Philpot); *Mutka v. Top Hat Imports, LLC*, No. 2:18cv539-FTM, 2018 WL 11485278, at *1 (M.D. Fla. 2018) (vacating default judgment when the defendant had "defenses that might affect the outcome of th[e] case, such as [the plaintiff] signing an arbitration agreement").

Applying these factors here, the scales tip in favor of setting aside default. No evidence has been lost. No substantive discovery has occurred, and no facts in the underlying disputes have changed. Brier, Tu, and JBBT cannot claim any prejudice for having to prove their claims. *See, e.g., Conn. State Dental Ass'n v. Anthem Health Plans, Inc*., 591 F.3d 1337, 1357 (11th Cir. 2009) (explaining in assessing prejudice, "the inquiry is whether prejudice results from *delay* [in responding to the complaint], not from having to continue to litigate the case"); *Gentile v. Am. Recovery Serv. Inc. of California*, No. 16-CV-81649, 2016 WL 11214090, at *2 (S.D. Fla. Nov. 15, 2016) ("Mere delay in the litigation, especially given the early stages of this case…does not

constitute prejudice to Plaintiff for present purposes."). On the other hand, if default is not vacated, Lottery and TinBu will be prejudiced in a way that has significant and detrimental financial consequences. *See Gentile*, 2016 WL 11214090, at \*2 (vacating default after finding that "permitting the Default to stand and Plaintiff to proceed with default judgment would likely result in significant financial loss to Defendant"); *Suntrust Bank v. Armsey*, No. 09-80606, 2010 WL 731802, at \*2 (S.D. Fla. Feb. 26, 2010) ("Delay in adjudicating a plaintiff's claim does not qualify as sufficient prejudice under Rule 55. Instead, [a plaintiff] would have to show that the delay would result in a loss of evidence, increased opportunities for fraud, or discovery difficulties."). If Counterplaintiffs truly desired a swift, efficient determination of their rights, they could have filed arbitration proceedings after being ordered to do so by the State Court in November 2023. (Doc. 57-1.) They have taken no steps to do so. Their own conduct belies their true motives. Such gamesmanship and bold defiance of the state court's order is blatant forum shopping and should not further be rewarded.

In light of the foregoing, good cause exists to set aside any default.[6]  *See, e.g., James River Ins. Co. v. SM-Ashley Park, LLC*, No. 3:10-cv-23-J-32, 2010 WL 5092420, at \*3 (M.D. Fla. Nov. 16, 2010) ("At most, Plaintiff must now proceed to litigate the case it brought in the first place."); *Lacy v. Sitel Corp.*, 227 F.3d 290, 293 (5th Cir. 2000) ("There is no prejudice…where the setting aside of the default has done no harm to plaintiff except to require it to prove its case.")

---

[6] The Court has neither decided damages nor entered a final default judgment in this case; therefore, Lottery and TinBu need only show "good cause" to lift the default Rule 55(c).  The Rule 60(b) inquiry applies only after a court decides damages and enters a final order.

## III.    The Counterclaims Must Be Arbitrated.[7]

"Federal law establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of such agreements." *Emp'rs Ins. Of Wausau v. Bright Metal Specialties, Inc*., 251 F.3d 1316, 1322 (11th Cir. 2001). Under the Federal Arbitration Act ("FAA"), arbitration agreements involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract...." 9 U.S.C. § 2.3. The FAA reflects a liberal federal policy favoring arbitration, and where, as here, the parties agree to arbitrate a dispute, the court must enforce that agreement. *Jpay, Inc. v. Kobel*, 904 F.3d 923, 929 (11th Cir. 2018). However, the FAA's presumption in favor of arbitration only applies to disputes the parties have agreed to arbitrate. *Emps. Ins. Of Wausau*, 251 F.3d at 1322. "Accordingly, the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614, 626 (1985). When a party seeking to avoid arbitration claims that no agreement exists, "[s]tate law generally governs" because "whether an arbitration agreement exists at all is 'simply a matter of contract.'" *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (cleaned up).

---

[7] Motions to compel arbitration are treated as a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty*., 501 F.3d 1244, 1251 (11th Cir. 2007). Hence, when ruling on a motion to compel arbitration, the Court "may consider matters outside the four corners of the complaint." *Tracfone Wireless, Inc. v. Simply Wireless, Inc.*, 229 F. Supp. 3d 1284, 1292 (S.D. Fla. 2017).

Under the FAA, there are three fundamental elements for courts to consider in ruling on a motion to compel arbitration: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitrate was waived.[8] *Amargos v. Verified Nutrition, LLC*, Case No. 22-cv-22111, 2023 WL 1331261, at \*2 (S.D. Fla. Jan. 31, 2023) (citing *Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*, 686 F. Supp. 2d 1318, 1322 (S.D. Fla. 2010), aff'd, 433 F. App'x 842 (11th Cir. 2011)). All three elements have been met in this case.

### A.    The Parties Agreed to Arbitrate their Disputes. [9]

There is no genuine dispute that the Counterclaims are subject to arbitration. Under the express terms of the Settlement Agreement, Brier and Tu released any and all claims they had against Lottery and TinBu as of April 14, 2021. The Settlement Agreement states: "The Parties intend, and this Agreement gives, the broadest release and discharge under the law." (Settlement Agrmt (sealed) - Doc. 56 at Exhibit 23, ¶¶ 3, 4.5.) As part of their consideration for doing so, Brier and Tu executed new Employment Agreements (Settlement Agrmt, at p. 2, "Whereas, the Parties desire to terminate the existing Executive Employment Agreements . . . and to enter into New Executive Employments in the form attached as Exhibit A hereto . . . .). The Affiliate Agreement with JBBT and the Convertible Promissory Notes were also attached to and incorporated as part of the Settlement Agreement. (Docs. 12-3, 12-4, 12-5.)

---

[8] Florida law is in accord. *See Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999).

[9] When the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007)(citing *Assoc. Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)).

The arbitration provision was a material term of the Settlement Agreement,

and the provision requires the parties to arbitrate any disputes not otherwise released,

including any and all future claims.  Specifically, the provision states:

> <u>Arbitration</u>.  Should **any disputes or disagreements arise between
> the Parties** that are not otherwise covered by Section 5 above, **any and
> all such disputes and disagreements shall be arbitrated in Texas,
> and administered by the American Arbitration Association
> ("AAA") under its Commercial Rules of Arbitration**. The Parties
> agree that, in the event of such controversy, dispute, or claim between
> us, the prevailing Party shall be entitled to recover from the losing Party
> all costs and expenses he, she, or it incurs in bringing and prosecuting,
> or defending, the arbitration, including reasonable attorneys' fees and
> costs.

*(Id.*, ¶ 7, emphasis added.)  This provision has never been modified or amended.  (Doc.

12-6.)  The Affiliate Agreement also references arbitration as the chosen dispute

resolution mechanism between the parties, which makes sense since it is directly

related to and referenced in the Settlement Agreement.  Section 10 of the Affiliate

Agreement reads:

> **10.  GOVERNING LAW AND ARBITRATION:** This Agreement shall
> be governed by the laws of the state of Delaware. The language to be used
> in arbitral proceedings shall be the English language.

(Doc. 12-5 at ¶ 10.)

These agreements cannot be viewed independently.  The integration clause in

the Settlement Agreement explicitly states that all of the Exhibits (e.g., the

Employment Agreements, the Convertible Promissory Notes, and the Affiliate

Agreement) form the "entire and complete agreement of the Parties," which makes

them subject to the arbitration clause contained in the Settlement Agreement.  As

such, arbitration is required for "any disputes or disagreements" that "arise between

the Parties" relating to any of the incorporated documents. (Doc. 56 at Exhibit 23, ¶¶ 7, 9.)  Indeed, this is exactly the conclusion reached by the Florida Supreme Court in *Airbnb, Inc. v. Doe,* where the Court held that arbitration can be compelled where the contract with the arbitration clause is incorporated by reference into the contract which does not contain an arbitration clause, such that the former could be interpreted as part of the latter contract.  336 So. 3d 698, 705 (Fla. 2022) ("[B]ecause Airbnb's Terms of Service incorporate by reference the AAA Rules that expressly delegate arbitrability determinations to an arbitrator, the agreement clearly and unmistakably evidences the parties' intent to empower an arbitrator, rather than a court, to resolve questions of arbitrability.").  The same reasoning applies here.

Brier, Tu, and JBBT undisputedly agreed to a valid arbitration provision in the Settlement Agreement requiring them to arbitrate "any disputes and agreements" that arise between themselves (on the one hand) and Lottery (on the other hand), and they understood the Settlement Agreement incorporated their Employment Agreements, Convertible Promissory Notes, and the Affiliate Agreement by reference. Any argument to the contrary is unavailing. Where, as here the existence of an arbitration agreement is undisputed, any question as to whether a claim falls within the scope of the agreement is resolved in favor of arbitration. *Pointe on Westshore, LLC v. Certain Underwriters of Lloyd's London*, 2023 WL 3122878, at *2 (M.D. Fla. April 27, 2023).

The issue of arbitration has already been briefed, argued, and fully and fairly litigated in the State Court Action.  Judge Nancy Jacobs considered the parties'

positions, heard oral argument, and <u>granted</u> Lottery and TinBu's motion to compel
arbitration of the claims asserted by Brier, Tu, and JBBT—which are exactly the same
claims at issue here. (Doc. 57-1.)  "Principles of comity suggest that a federal court
give full faith and credit to a state court's adjudication of state law issues." *Weir v.
Merrill Lynch Pierce Fenner & Smith, Inc.,* 586 F. Supp. 63, 65 (S.D. Fla. 1984) (citing
*Colorado River Water Conserv. Dist. v. United States,* 424 U.S. 800, 818 (1976)).  This
case is instructive.  Similar to the instant matter, the Southern District of Florida in
*Weir* faced a situation where the state court has already rendered its "decision
ordering arbitration pursuant to a contractual agreement found previously to exist
between the parties."  586 F. Supp. at 65.  Applying principles of comity, the Southern
District in Weir held:  "[T]his Court finds itself bound by the state court arbitration
order as to state claims." *Id.,* citing *ltracashmere House Ltd. v. Meyer,* 664 F.2d 1176,
1183 (11th Cir.1981); *Gov't Personnel Mut. Life Ins. Co. v. Edward J. Kays,* 584 F.2d
738, 799 (5th Cir.1978).

Additionally, "[c]ollateral estoppel, i.e., issue preclusion, refers to the effect of a
judgment in foreclosing relitigation of an issue that has already been litigated and
decided." *Wingard v. Emerald Venture Florida LLC*, 438 F.3d 1288, 1293 (11th Cir.
2006). "In considering whether to give preclusive effect to state-court judgments under
res judicata or collateral estoppel, [ ] federal court[s] must apply the rendering state's
law of preclusion." *Community State Bank v. Strong*, 651 F.3d 1241, 1263 (11th Cir.
2011). Under Florida law, collateral estoppel will preclude relitigation of an issue
when 1) the identical issues were presented in a prior proceeding; 2) there was a full

and fair opportunity to litigate the issues in the prior proceeding; 3) the issues in the prior litigation were a critical and necessary part of the prior determination; 4) the parties in the two proceedings were identical; and 5) the issues were actually litigated in the prior proceeding. Of these issues, "[t]he opportunity to fully and fairly litigate the issues to be estopped is 'the most significant consideration in determining whether to invoke collateral estoppel.' " *Eisenberg v. City of Miami Beach*, 54 F. Supp. 3d 1312, 1320–21 (S.D. Fla. 2014) (quoting *Hercules Carriers, Inc. v. Claimant State of Fla., Dept. of Transp.,* 768 F.2d 1558, 1580 (11th Cir.1985)). These elements are present here. The parties are identical; the claims are identical. The issues were critical and necessary to the adjudication of the State Court Action, as they were the only claims asserted against Lottery and TinBu. The parties also had the full and fair opportunity to litigate the issue of compelling arbitration and did so through briefing and oral argument, ultimately resulting in the state court's order compelling arbitration. The appeal of that order to the 2nd DCA and the subsequent <u>voluntary dismissal</u> of that appeal by Brier, Tu, and JBBT does not change the analysis.

Indeed, the Restatement (Second) of Judgments, to which Florida courts look, clarifies in the context of issue preclusion what it means for an issue to be "actually litigated":

> *d. When an issue is actually litigated.* When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated within the meaning of this Section. An issue may be submitted and determined on a motion to dismiss for failure to state a claim, a motion for judgment on the pleadings, a motion for summary judgment ..., a motion for directed verdict, or their equivalents, as well as on a judgment entered on a verdict.

RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982) (cmt.) (ital. in original). Important to this framework is the principle that the issue must be "properly raised," "submitted for determination," and "determined." All of that occurred in this case. The choice to dismiss the appeal was a voluntary and intentional decision by Counterplaintiffs, and they should not be able to use that as both a sword and a shield. Rehashing the same arguments serves no legitimate purpose and will only waste valuable time and resources of the court and the parties, which is exactly why these doctrines exist.

Even if the Court is not convinced that principles of comity or preclusion apply, arbitration is still warranted based on a plain reading of the documents, which are admitted and not contested. When there is no genuine dispute of fact and the Court determines that an applicable agreement to arbitrate exists, "the court shall make an order directing the parti es to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. "A dispute is not 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.' " *Bazemore*, 827 F.3d at 1333 (quoting *Baloco v. Drummond Co.*, 767 F.3d 1229, 1246 (11th Cir. 2014)).

### B.   Lottery & TinBu Have Not Waived Arbitration Rights.

Under the FAA, courts addressing the question of waiver must look at the totality of the circumstances presented. District courts have routinely found that a party does not substantially invoke the litigation machinery by participating in litigation only to avoid a default judgment. *See, e.g., Sherrard v. Macy's System & Tech. Inc.*, 724 Fed.Appx. 736, 740 (11th Cir. 2018) (finding no waiver of arbitration

when party's participation in the litigation was only to avoid a default judgment); *Amargos*, 2023 WL 1331261, at *6 (finding under the totality of the circumstances, the filing of an answer, participation in scheduling conference, and selection of mediator did not demonstrate waiver of contractual right to arbitrate).

The same is true here. No substantive discovery has occurred. Lottery and TinBu have consistently raised arbitration as a defense and referenced the State Court's Order compelling arbitration since the very beginning of this case. Their participation in mediation or filings made at the direction of the Court or (now) to avoid a default judgment does not constitute waiver. Nor does it establish they "acted inconsistently with the arbitration right." *Garcia,* 699 F.3d at 1277. Accordingly, no waiver has occurred.

## **CONCLUSION**

For the reasons discussed herein, Lottery and TinBu respectfully seek dismissal of the remainder of this action (e.g., the Counterclaims) in their entirety for lack of subject matter jurisdiction. Alternatively, Lottery and TinBu ask that the Court deny any entry of default or default judgment and instead, compel Counterplaintiffs to arbitrate their Counterclaims.

### Certificate of Conference under Local Rule 3.01(g)

In accordance with Local Rule 3.01(g) and the Court's Endorsed Order at Doc. 128, the undersigned counsel certifies that she conferred with counsel for Counterplaintiffs, Roger Brown, in a substantive telephone conference on August 13, 2025, and Counterplaintiffs do not consent to any of the relief requested in this motion.  The undersigned counsel further certifies that she was not able to reach Mr. Brown last week, as he was traveling internationally on vacation until late in the evening on August 12, 2025.

Dated:  August 14, 2025.

Respectfully submitted,

By:  /s/Elizabeth J. Campbell

Elizabeth J. Campbell, Esq.
Florida Bar No. 0027916

**Law Offices of Elizabeth J. Campbell, LLC**
5400 Glenridge Drive, #720768
Atlanta, GA 30342
Email:   ECampbell@ejc-law.com
Phone:  770.634.8194

*Attorneys for Plaintiffs/Counterclaim*
*Defendants Lottery.com, Inc. and TinBu, LLC*

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 14, 2025, I electronically filed the foregoing *Renewed Motion to Dismiss for Lack of Subject Matter Jurisdiction or, In the Alternative, Motion to Set Aside Default and Compel Arbitration by Lottery.com and TinBu, LLC* with the Clerk of the Court by using the CM/ECF system which will send a Notice of Electronic Filing to all counsel of record, including:

> Roger C. Brown
> MORGAN & MORGAN, P.A.
> 1700 Palm Beach Lakes Blvd., Suite 500
> West Palm Beach, Florida 33401
> RBrown@forthepeople.com

> *Attorneys for Defendants/Counterclaim Plaintiffs*

By: */s/Elizabeth J. Campbell*

Elizabeth J. Campbell, Esq.
Florida Bar No. 0027916